**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01071-CMA-BNB

STEESE, EVANS & FRANKEL, P.C.,

     Plaintiff,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Defendant,

and

JOHN DOE,

     Intervenor.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING INTERVENOR'S
MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO
STRIKE PORTIONS OF JOHN DOE'S DECLARATION**

---

     This case was brought by Plaintiff Steese, Evans & Frankel, P.C.'s ("Plaintiff") to

compel the disclosure of certain information from Defendant the United States

Securities and Exchange Commission's ("SEC") pursuant to a request under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  This matter comes before the

Court on Plaintiff's Motion for Summary Judgment (Doc. # 62), the SEC's Motion for

Summary Judgment (Doc. # 73), Intervenor John Doe's ("Doe") Motion for Summary

Judgment (Doc. # 75), and Plaintiff's Motion to Strike Portions of John Doe's

Declaration Submitted in Conjunction With John Doe's Motion for Summary Judgment

(Doc. # 84).   For the reasons set forth below, Plaintiff's Motion for Summary Judgment

(Doc. # 62) is denied, the SEC's Motion for Summary Judgment (Doc. # 73) is granted,

Doe's Motion for Summary Judgment (Doc. # 75) is granted, and Plaintiff's Motion to

Strike Portions of John Doe's Declaration Submitted in Conjunction With John Doe's

Motion for Summary Judgment (Doc. # 84) is denied.

## I.  BACKGROUND[1]

## A.   PLAINTIFF'S INITIAL REQUEST

Between January 1, 2005, and March 16, 2010, 24 SEC employees and seven

employees of contractors with the SEC were found to have improperly used SEC

computers to access or attempt to access sexually explicit websites.  The SEC

conducted an investigation and implemented various levels of corrective action.

On February 2, 2010, Plaintiff served on the SEC a FOIA request seeking copies of

documents related to the employees' misconduct.  (Doc. # 62-2, Initial Request.)

Specifically, Plaintiff requested the following:

- Documents reflecting the names of each present and former
  employee and contractor found to have engaged in such activity
  (in lieu of producing actual internal documents you can provide
  me with a list of the names of those individuals together with a
  description of their position with the SEC);

---

[1]  Unless otherwise noted, the following facts are not in dispute.  To the extent a party
did not request additional discovery pursuant to Fed. R. Civ. P. 56(f) in order to admit or deny
a factual allegation, the Court treated the factual allegation as undisputed.

- The pages of material produced to The Washington Times in response to its open records request for similar material; and

- Documents reflecting disciplinary action suggested, and disciplinary action in fact taken, if any, against such person (in lieu of actual internal documents you can provide me with a list containing such persons names, the disciplinary action suggested, and the disciplinary action taken, if any).

*Id.*

On March 18, 2010, the SEC responded to the request by providing Plaintiff with all of the documents previously produced to the Washington Times (the second part of Plaintiff's request). (Doc. # 62-3, Response Letter; Doc. # 73-2, Siford Dec., ¶ 6.) These documents consisted of 16 reports of the Agency's Office of the Inspector General's ("OIG") investigation into the use of SEC computers to access pornography. (Doc. # 73-2, Siford Dec., ¶ 6.) The description given to some of these documents included the applicable office location, *e.g.*, "OIG-503; Misuse of Government Computer Resources and Official Time at the Los Angeles Regional Office." (Doc. # 62-3, Response Letter.) The names of the individuals investigated and other information the SEC determined would aid in identifying those individuals had already been redacted from the reports before they were given to the Washington Times. (*Id.*) The SEC withheld the information sought in the first and third parts of Plaintiff's FOIA request, including the redactions, on the ground that to do so would constitute a clearly unwarranted invasion of personal privacy under Exemptions 6 and 7(C) of FOIA, 5 U.S.C. 552(b)(6) and (7)(C). (Doc. # 62-3, Response Letter; Doc. # 73-2, Siford Dec., ¶ 5.)

**B.      PLAINTIFF'S APPEAL AND THE INSTANT LITIGATION**

On March 25, 2010, Plaintiff appealed the SEC's denial of the first and third parts of its request to the head of the SEC.  (Doc. # 62-6, Appeal.)  On May 7, 2010, after the SEC failed to respond within the statutory 20-day period, 5 U.S.C. § 552(a)(6)(A)(ii), Plaintiff filed its initial Complaint in the instant action.  (Doc. # 1.)  In the Complaint, Plaintiff requested relief in the form of, *inter alia*, a production of all information responsive to its initial request (in unredacted form), documents reflecting the name of each present and former employee and contractor found to have engaged in the subject conduct, and documents reflecting disciplinary action suggested and taken against each individual identified.  (*Id.* at 16-17.)  John Doe sought to intervene in this action on June 7, 2010 (discussed further below).

Subsequent to the filing of the Complaint, the SEC granted the appeal in part and produced, in response to the third part of Plaintiff's request, a chart displaying the disciplinary actions proposed and taken against employees who were found to have used SEC computers to access sexually explicit websites between January 1, 2005, and March 16, 2010, the date of the SEC's search for responsive documents.  (Doc. # 62-8, Response to Appeal.)  The SEC continued to withhold the names of the employees and contractors, as well as the employees' position descriptions.  In doing so, the SEC asserted Exemption 6 of the FOIA and claimed that to provide such information would constitute a clearly unwarranted invasion of personal privacy.  (*Id.*)

4

On June 15, 2010, Plaintiff wrote to SEC's counsel and requested the following additional information for each individual identified in the SEC's chart:

- the "SK" and/or "G" rank of the employee or contractor;

- a description of the job responsibility of the employee or contractor;

- the SEC office in which the employee worked or for which the contractor performed services;

- the amount of time that the person engaged in the activity alleged in the FOIA request and Complaint; and

- for those instances not identified in the chart attached to the SEC's June 14, 2010 response, if any . . . , and for each contractor, the discipline proposed and the discipline issued.

(Doc. # 62-9, Plaintiff Letter.)  Plaintiff agreed that it is no longer seeking the names of either the nonsupervisory employees or the employees of the contractors.  (Doc. # 62, Pl.'s Mot. Summ. J. at 6, ¶ 7.)

On or about June 16, 2010, the parties agreed that Plaintiff would not oppose the SEC's motion for relief from the requirements of Fed. R. Civ. P. 26(f) if the SEC would provide the grade levels of the disciplined employees and indicate whether those employees had supervisory duties.  (Doc. # 62-9.)  On June 22, 2010, the SEC provided this information in the form of a revised disciplinary chart.  (Doc. # 62-10).  The SEC also informed Plaintiff that all employees at Grades SK-15 (three employees) and SK-17 (one employee) were supervisors. (*Id.*)  Based on this information, Plaintiff agreed to forego further discovery pre-summary judgment, but without prejudice to its request for the additional information requested in its June 15, 2010, letter to any discovery that

Plaintiff may find necessary under Fed. R. Civ. P. 56(f).  (Doc. # 62, Pl.'s Mot. Summ. J., ¶ 8.)

On July 23, 2010, Plaintiff filed its Amended Complaint, requesting relief in the form of, *inter alia*:

- a description of the job responsibility of each of the 24 SEC employees and each contractor employee;

- the SEC office in which the employee worked or for which the contractor performed services;

- the amount of time the persons engaged in the activity in question; and

- the name of each SEC supervisory employee and the identity of each contractor whose employees were found to have engaged in the conduct in question.

(Doc. # 46 at 21.)

## C.    INTERVENOR JOHN DOE

On June 7, 2010, John Doe, one of the individuals included in the SEC's chart, moved to intervene to defend against the disclosure of his identity.  (Doc. ## 16 and 17; Doc. # 77, Doe's Mot. Summ. J. at 4, ¶ 6.)  On July 23, 2010, the Court permitted John Doe to intervene and use a pseudonym, and to a limited extent, file materials under seal.  (Doc. # 51; Doc. # 62, Pl.'s Mot. Summ. J. at 7, ¶ 3.)

## D.    THE PARTIES' SUMMARY JUDGMENT MOTIONS

On August 9, 2010, Plaintiff filed its Motion for Summary Judgment requesting that the Court require the SEC to disclose the following information under FOIA:

(1)     the names of the individual SEC employees at Grade SK-15 and
        above who were found to have used their SEC computers to access
        pornography,

(2)     the offices at which all of the employees and contractors worked,

(3)     the position descriptions for all of the SEC employees,

(4)     the amount of time each employee and contractor engaged in such
        conduct, and

(5)     the names of the contractors whose employees engaged in such
        conduct.

(Doc. # 62, Pl.'s Mot. Summ. J. at 24.)[2]  As grounds for its motion, Plaintiff claims

Exemptions 6, 7(C), 2 and 5 of FOIA do not apply to prohibit disclosure, and that it

properly exhausted its administrative remedies.  Both the SEC and John Doe filed

responses.  (Doc. ## 74, 77.)  Plaintiff filed its reply on October 14, 2010.  (Doc. # 80.)

On September 17, 2010, the SEC filed its Motion for Summary Judgment

requesting that the Court sustain the SEC's nondisclosure.  (Doc. # 73.)  As grounds for

its motion, the SEC claims Plaintiff failed to exhaust its remedies with respect to some

of the information because it was not part of Plaintiff's initial FOIA request.  Additionally,

the SEC claims the requested information falls within the purview of Exemption 6, and

therefore, was properly withheld because the need to protect the privacy of the

---

[2]   The information Plaintiff now requests is both broader and narrower than the
information it sought under its Amended Complaint.  First, Plaintiff is now seeking the names
of employees of SK-15 or higher, whereas in the Amended Complaint, Plaintiff sought the
names of only supervisory employees (employees of grade SK-16 are not supervisory).  (Doc.
# 46, Am. Compl. at 21.)  Additionally, Plaintiff is now seeking the job descriptions of only the
SEC employees, whereas in the Amended Complaint, Plaintiff sought the job descriptions for
both the SEC and the contracting employees.  (*Id.*)

individuals outweighs any interest the public may have to the information.  Plaintiff filed its response on October 8, 2010, and the SEC filed its reply on October 29, 2010.  (Doc. ## 81, 86.)  John Doe did not respond to the SEC's motion.

On September 17, 2010, John Doe filed his motion for summary judgment requesting that the Court find that Exemptions 6 and 7(C) apply to preclude disclosure. Doe contends he and his family have a substantial privacy interest in the allegedly identifying information, while Plaintiff has failed to articulate any cognizable public interest.  Plaintiff filed its response on October 15, 2010, and Doe filed his reply on October 29, 2010.  (Doc. ## 85, 87.) The SEC did not respond to Doe's motion.

In support of its motion and in opposition to Plaintiff's motion for summary judgment, Doe submitted his own declaration. (Doc. # 76.)  Plaintiff filed a motion to strike portions of Doe's declaration for allegedly consisting of self-serving and conclusory allegations that fail to comply with Fed. R. Civ. P. 56(e).  (Doc. # 84.)

All of the foregoing motions are fully briefed and currently before the Court. No party has requested additional discovery pursuant to Fed. R. Civ. P. 56(f).

## II.  STANDARD OF REVIEW

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B); *see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

8

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  All

underlying facts and inferences are analyzed in the light most favorable to the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).

## III.  ANALYSIS

## A.    PLAINTIFF'S MOTION TO STRIKE

In support of his motion for summary judgment, Doe submitted his own

declaration generally attesting to the likelihood he would be identified if his job

description is disclosed, the harm that may befall him and his family if he is ultimately

identified, and the extent of the information the SEC already made public.  (Doc. # 76,

Doe Dec.)  Plaintiff moves to strike these portions of the declaration on the grounds that

they constitute "sensational" "self-serving, conclusory assertions, and statements of

mere beliefs [sic]."  (Doc. # 84 at 2-3.)  Plaintiff also contends that Doe's

characterizations of various OIG reports that were attached to his declaration are

incorrect.  (*Id.* at 5.)  Doe counters that his statements are either properly based on

personal knowledge or are supported by specific factual detail.  Doe also cites to cases

in which courts considered an affiant's estimation of harm when determining whether a

disclosure of information should be required.  (Doc. # 88, Doe's Resp. at 4-5.)

The Court agrees with John Doe. His statements are supported either with

personal knowledge or the specific factual detail provided with his declaration and,

thus, are not conclusory as Plaintiff alleges.  However, labeling the statements as

"conclusory," "self serving," or otherwise is a moot point because, when ruling on the parties' summary judgment motions, the Court will only consider the supporting facts and documents, not Doe's characterization of or conclusions surrounding them. Furthermore, the Court will consider Doe's estimation of harm that may result from a disclosure of his identity, though this information is not essential to the Court's holding. *See Utah v. U.S. Dep't of the Interior,* 256 F.3d 967, 970 (10th Cir. 2001) (considering affidavit regarding potential harm if trade secret information was disclosed despite Exemption 4).   Therefore, the Court denies Plaintiff's motion to strike but nonetheless finds the subject statements have no affect on whether the parties have established a genuine issue of material fact sufficient to avoid summary judgment as set forth below.

## B.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Before moving on to the merits of the parties' motions, the Court must determine whether Plaintiff exhausted its administrative remedies.

Under FOIA, the district court has jurisdiction to enjoin an agency from withholding agency records and to order the production of any agency records improperly withheld.  5 U.S.C. § 552(a)(4)(B).  However, "[e]xhaustion of administrative remedies is generally required before seeking judicial review so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Flowers v. IRS*, 307 F.Supp.2d 60, 66 (D.D.C. 2004)

(internal quotation and citation omitted).[3]   A complainant exhausts its remedies by requesting specific information in accordance with published administrative procedures and appealing any improperly refused request to the head of the agency.  5 U.S.C. § 552(a)(3); *see Judicial Watch, Inc. v. FBI*, 190 F.Supp.2d 29, 32-33 (D.D.C. 2002).

The SEC contends that, because they were not part of Plaintiff's original FOIA request, Plaintiff failed to exhaust its administrative remedies with respect to three categories of information: (1) the SEC offices in which the employees worked, (2) the amount of time the employees engaged in the subject activity, and (3) the names of the contracting companies whose employees were found to have engaged in the subject conduct.   (Doc. # 73, SEC's Mot. Summ. J. at 9.)

In response, Plaintiff points to its first and third groups of requested documents and argues that this information "necessarily would" have been included in the responsive records.  (Doc. # 81 at 6.)  Plaintiff also contends that the SEC understood the request included the office locations because the SEC ultimately produced three such locations.  (*Id.* at 7.)  Lastly, Plaintiff argues it "unequivocally" requested the names of the contractors, pointing to its use of the word "contractor" in the first group.

---

[3]   Some courts have found that the exhaustion of administrative remedies is not a jurisdictional prerequisite, but rather a prudential consideration.  *Flowers*, 307 F.Supp.2d at 66; *Kennedy v. U.S. Dep't of Homeland Security*, No. 03-6076, 2004 WL 2285058, *4-5 (W.D.N.Y. Oct. 8, 2004) (agreeing with the reasoning of the D.C. Circuit).  Based on an unpublished and non-precedential decision, the view of the Tenth Circuit appears to be that exhaustion is a jurisdictional prerequisite.  *Trenerry v. IRS*, No. 95-5150, 78 F.3d 598, 1996 WL 88459, *1 (10th Cir. 1996) ("We agree with the district court that the district court lacked subject matter jurisdiction over this [FOIA] action where plaintiff has failed to exhaust her administrative remedies.").  This distinction is of little moment in the instant case as the Court finds the failure of Plaintiff to exhaust its remedies bars judicial review under either view.

The Court agrees with the SEC that Plaintiff did not identify the three categories of information in its initial request.  First, Plaintiff proffers no support, neither evidence, precedent, nor explanation, as to why the information "necessarily" would have been included in the requested documents.  Even when viewing the evidence in the light most favorable to the non-moving party, the Court cannot just assume this fact.  Second, production of the office locations was a byproduct of the SEC listing the documents produced to The Washington Times, *e.g.*, "OIG-503; Misuse of Government Computer Resources and Official Time at the Los Angeles Regional Office."  (Doc. # 62-3.)  The fact that they were produced in this manner indicates that the office location was used to describe the report and not that the SEC understood Plaintiff's request to encompass the information.  Lastly, the parenthetical clarifications Plaintiff provided in its document descriptions delineates the very information Plaintiff was seeking, namely, "the **names** of the individuals together with a description of their position with the SEC" and "a list containing such persons **names**, the disciplinary action suggested, and the disciplinary action taken, if any."  (Doc. # 62-2, Pl.'s Initial Request (emphasis added).)  These clarifications make clear that Plaintiff was seeking the names of individual contractors, and not the contracting companies.

The agency must have "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Flowers*, 307 F.Supp.2d at 66.  Plaintiff's request did not provide the SEC this opportunity.  Accordingly, the Court finds that Plaintiff failed to exhaust its administrative remedies

with respect to the three categories of information (*i.e.*, the office locations, the amount of time spent engaged in the activity, and the names of the contracting companies whose employees were implicated).  As a result, the Court is left with the narrow question of whether the SEC's withholding of the identities of the censured employees with grade SK-15 and higher and the employees' job descriptions was justified.

## C.    THE FOIA

The Freedom of Information Act provides that a government agency must make its "records promptly available to any person" who has submitted a request that "reasonably describes such records."  5 U.S.C. § 552(a)(3).  "The basic purpose of [FOIA] is to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (quotation omitted). Agencies, however, are permitted to retain records that fall into one or more of the exemptions enumerated in the Act.  5 U.S.C. § 552(b).  The Act "is to be construed broadly in favor of disclosure," while "its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1226 (10th Cir. 2007).  "The federal agency resisting disclosure bears the burden of justifying withholding."  *Id.*

The FOIA exemption that is primarily relevant in this case is Exemption 6.  This exemption prohibits the disclosure of information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  A file is "similar" if it contains personal information that "applies to a particular individual."  *United States Dep't of State v.*

*Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

Exemption 6 requires a balancing of the public interest in disclosure against the possible

invasion of privacy caused by the disclosure.[4]   *DOJ v. Reporters Committee*, 489 U.S.

749, 762, 109 S.Ct. 1468, 1475-76, 103 L.Ed.2d 774 (1989).

When evaluating the public interest/invasion of privacy balance, the Court should

consider the information that already has been disclosed to the public.  *See Trentadue*,

501 F.3d at 1234, 1236 (finding insufficient privacy interests because the names were

already a part of the public record); *Forest Guardians v. FEMA,* 410 F.3d 1214, 1219

(10th Cir. 2005) (finding the absence a public interest because the information was

cumulative of that already provided); *Capital Collateral Counsel v. DOJ*, 331 F.3d 799,

804 (11th Cir. 2003) ("the public interest at stake in this case must be evaluated in light

of all that is already known about DOJ's disciplinary procedures and its discipline of

Cox.").

In this case, the SEC has already released substantial information regarding the

misconduct.  It has produced 16 OIG reports concerning the employees' use of the SEC

computers to access pornography.  (Doc. # 73-2, Siford Dec., ¶ 6.)  The reports were

redacted to withhold identifying information, (*id.*), yet in some instances, provide the

office location in which the investigation took place.  (Doc. # 73-2, March 18, 2010, SEC

Letter.)  The SEC has further disclosed the grade level, supervisory level, and discipline

---

[4]   Exemption 7(C) is similar to Exemption 6 in that they both balance the individual's
privacy interests with public interest in disclosure.  Thus, to the extent some of the cases
discussed herein address Exemption 7(C), they were used to inform the Court as to the nature
of the interests to be balanced.  *See Trentadue*, 501 F.3d at 1233.

suggested and imposed for each of the employees, as well as informed Plaintiff that the violations were "spread across several offices of the agency."  (Doc. # 73-5, SEC Chart; Doc. # 73-1, Risinger Dec., ¶ 10.)  Additional information was provided for some of the employees in the OIG's publicly available semi-annual reports to Congress, namely the nature and extent of the misconduct, admissions of employees, the general nature of their responsibilities (*e.g.*, attorney, enforcement), and the salary range covering all employees of grade SK-14 and higher.  (*See* Doc. ## 76-1 through -7.)

   With this backdrop, the Court will now consider whether Plaintiff is entitled to the information for which it exhausted its remedies, namely the identities of the five SEC employees whose grade is SK-15 or higher and the job descriptions for all of the SEC employees involved.

   1.   Unwarranted Invasion of Privacy

   The privacy interest protected by Exemption 6 encompasses "the individual's control of information concerning his or her person" *Reporters Comm.*, 489 U.S. at 775, to prevent harassment, annoyance, embarrassment, disgrace, or loss of employment or friends.  *See Rose*, 425 U.S. at 377; *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992). "Exemption 6 [is] directed at threats to privacy interests more palpable than mere possibilities."  *Rose,* 425 U.S. at 1608 n.19.  The fact that "an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  *Reporters Comm.*, 489 U.S. at 770 (quotation and citation omitted); *see also Capital Collateral Counsel*, 331 F.3d at 803 ("fact that Cox

was a public official . . . does not render her interest in preserving her personal privacy without weight.").  In fact, a "government employee generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure." *Hunt*, 972 F.2d at 288 (citing *Rose*, 425 U.S. at 376-77).

        a)    *Names of Employees*

Plaintiff is seeking the names of all employees having grade SK-15 or higher who were involved in the misconduct.  Plaintiff contends that these employees "ha[ve] no attendant claim to privacy with respect to [their] conduct" because they knew their conduct was wrong at the time.  (Doc. # 62, Pl.'s Mot. Summ. J. at 14.)  Plaintiff characterizes the asserted privacy interest as one "not in continued privacy of personal matters, but in anonymity so that [supervisors] can avoid criticism for violations of government regulations."  (Doc. # 81, Pl.'s Resp. at 14, quoting *Sullivan v. Veterans Admin.*, 617 F.Supp. 258, 261 n.5 (D.C.C. 1985).)  In doing so, Plaintiff dismisses the sexual nature of the misconduct, contending that the disclosure will not "delve into the personal life or private affairs" of the employees. (Doc. # 81, Pl.'s Resp at 14-16; Doc. # 80, Pl.'s Reply at 2.)

The Court disagrees and holds that the employees have an overwhelming privacy interest in preventing the disclosure of their identities.  First, contrary to Plaintiff's assertions, the presence of misconduct does not eliminate the individuals' privacy interests.  *Reporters Comm.,* 489 U.S. at 763-771 (protecting from disclosure the compilation of criminal records, or "rap sheets").  The privacy interest implicated

16

when misconduct is present is the same as when it is absent – to control the

dissemination of information concerning the employee. In this case, information

concerning the misconduct has already been disclosed.  It is only the individual

identities of the persons involved in the misconduct that Doe and the SEC are seeking

to protect. In this regard, this case is similar to *Rose* where New York University law

students sought case summaries concerning U.S. Air Force Academy's honor and

ethics hearings for a law review project on military discipline.  *Rose*, 425 U.S. at 354-55.

Despite the fact that the summaries were posted on bulletin boards throughout the

Academy (with cadet names redacted if found not guilty), the Court described the

privacy interests the cadets possessed:

> [M]ost significantly, the disclosure of these summaries implicates similar
> privacy values [as with personnel files]; for as said by the Court of
> Appeals, 495 F.2d, at 267, "identification of disciplined cadets – a possible
> consequence of even anonymous disclosure – could expose the formerly
> accused men to lifelong embarrassment, perhaps disgrace, as well as
> practical disabilities, such as loss of employment or friends."

*Id*. at 376-77.  The Court further noted that, while identifying information may have been

deleted, "what constitutes identifying information regarding a subject cadet must be

weighed not only from the viewpoint of the public, but also from the vantage of those

who would have been familiar, as fellow cadets or Academy staff, with other aspects of

his career at the Academy."  *Id*. at 380.  With this, the  Court concluded:

> [I]t sufficed to protect privacy at this stage in the proceedings by enjoining
> the District Court that if in its opinion deletion of personal references and
> other identifying information "is not sufficient to safeguard privacy, then the
> summaries should not be disclosed to (respondents)."

17

*Id.* at 382.  Thus, individuals involved in disciplinary matters possess a privacy interest in controlling the dissemination of their disciplinary records and identifying information.

Second, the disclosure in this case is not limited to the reputational embarrassment of having misused government property on official time but rather extends to the embarrassment resulting from public knowledge that the conduct was of a sexual nature.   Had the public disclosure been a relatively innocuous report that SEC employees had been found spending hours surfing the Internet, the implicated privacy interest might weigh less.  But that is not the case.  Rather, the public was informed that employees were found to have spent hours at work viewing sexually explicit websites. This reflects on the employees' sexual needs and/or desires and, in at least one instance, an admitted long-standing addiction to Internet pornography.  (*See* Doc. # 76-2, Doe Dec., Ex. 2.)  Moreover, one employee has testified that, should his identity become known, he would be subject to "severe personal and professional harm including embarrassment and disgrace, . . . possible loss of my current job [and] future employment opportunities" and "certain, immediate and severe" harm to his family. (Doc. # 76, Doe Dec., ¶ 18.)  The Court, therefore, finds that the sexual nature of the misconduct reinforces the need to protect the privacy interests of these individuals. *See Hunt*, 972 F.2d at 288 ("unwarranted invasion of the agent's privacy in this case is bolstered by the lewd and personal nature of Hunt's allegations . . . of sexual and professional misconduct"); *Rose*, 425 U.S. at 377 (noting that disclosure of disciplinary

files could "expose the formerly accused men to lifelong embarrassment, perhaps

disgrace, as well as practical disabilities, such as loss of employment or friends.").

In accordance with the foregoing, the Court finds that the employees have

a substantial privacy interest in the protection of their identities.

        b)    *Employees' Job Descriptions*

The Court must determine whether the job descriptions Plaintiff seeks are

sufficiently identifying to invade the employees' privacy interest.  *Rose*, 425 U.S. at

1608 (acknowledging that district court should not produce disciplinary records if

redaction of identifying information was not sufficient to protect privacy interests);

*Forest Guardians*, 410 F.3d at 1220 (permitting withholding of GIS files that could easily

lead to the discovery of an individual's name).   Both the SEC and Doe argue these

descriptions are inherently identifying.  (Doc. ## 73 at 16; 75 at 13.)  In response,

Plaintiff argues that the "mere possibility that factual information might be pieced

together to supply the 'missing link,' and lead to personal identification, does not exempt

such information from disclosure."  (Doc. # 62, Pl.'s Mot. Summ. J. at 22 (quoting

*Dayton Newspapers, Inc. v. Dep't of the Air Force,* 107 F. Supp. 2d 912, 919 (S.D. Ohio

1999).)

Both the SEC and John Doe have submitted declarations attesting to the

identifying nature of the job descriptions.   Specifically, Mr. Risinger, who is "intimately

familiar with the SEC position descriptions," has reviewed most of those at issue and

has concluded "that if the SEC were to disclose these position descriptions, these

employees would be in danger of being identified." (Doc. # 73-1 at 3, ¶ 9.)  The risk

is present "because of all of the information contained in the position descriptions,"

including position title, description of duties, subject matter of work, Division and office,

branch, employee's supervisor's position, and the SEC offices and job titles of other

employees with whom the employee interacts. (*Id.*)  In fact, Mr. Risinger states that any

one these pieces of information could assist in identifying the individual employees.

(*Id.*)

John Doe corroborates this.  He argues that, given the information that is already

available, if the SEC were forced to disclose office locations, "one can readily identify

the names of the individuals who meet the criteria."  (Doc. # 75, Doe's Mot. Summ. J.

at 13.)  In support of this, Doe describes an Internet search he conducted using the

information that is already available with the information Plaintiff is requesting in this

action. The search results identified only two individuals, Doe being one of them.

(Doc. # 76, Doe. Dec., ¶ 15.)

In view of this undisputed evidence, the Court finds that the risk of the employees

being identified from their job descriptions is not a mere possibility but is a palpable and

substantial threat that may be accomplished with a simple Internet search.  This risk is

present upon disclosure of the job description alone, let alone when cross referenced

with the plethora of other information already provided to the public.  Accordingly, the

Court finds that, like their names, the employees' have a substantial privacy interest in

the disclosure of their detailed job descriptions. *See Reporters Comm.*, 489 U.S. at

20

1478 (noting that FOIA provides for an agency to "delete identifying details when it makes available [records]" to "the extent required to prevent a clearly unwarranted invasion of personal privacy").

2.   The Public's Interest in the Requested Information

"The basic policy of 'full agency disclosure' . . . focuses on the citizens' right to be informed about 'what their government is up to.'" *Reporters Comm.*, 489 U.S. at 773 (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)).  Accordingly, the core purpose of the FOIA is to disclose records which "contribute[] significantly to public understanding of the operations or activities of the government." *Id.* at 775 (quotation and citation omitted).  Thus, as part of the balancing, the Court must assess the extent to which disclosure would contribute to this understanding. *Trentadue*, 501 F.3d at 1233.  As noted earlier, the public already has comprehensive information regarding the SEC's investigation into the matter, including with respect to the SEC's investigatory procedure, the results of the investigation, the nature and extent of the misconduct, and the SEC's disciplinary response.

a)   *Names of Employees*

Plaintiff is seeking the names of only the employees that are grades SK-15 and higher.  The weight accorded to the public interest in knowing the identity of individual federal employees is dependent on two factors: (1) the activity for which the employee

has been censured, and (2) the level of responsibility held by the employee.  *Trentadue*, 50 F.3d at 1234 (citation omitted) (finding the names of low-level employees "would shed little light on the operation of government").

Plaintiff's explanation about how these names will further the public's knowledge focuses on the latter.  Plaintiff's argument appears to be that, because "the mindset and attitude of [government] entities toward fulfillment of their responsibilities and assigned mandate can best be gleaned from the conduct of management personnel (such as supervisors)," the public is entitled to know the identities of the five alleged supervisors. (Doc. # 81, Pl.'s Resp. at 10.)  The SEC and Doe counter that the information that contributes to the public's understanding of what the SEC "is up to" have already been provided to Plaintiff.  (Doc. # 73, SEC's Mot. Summ. J. at 11-12; Doc. # 77, Does' Resp at 15-18.)  SEC also contends that the identification of the employees will add little to the public's current understanding because the misconduct involved was not directly related to how the government functions and none of the employees supervise a larger number of employees or were responsible for significant policy-making function. (*Id.* at 13.)

The Court concludes that the public interest in the individuals' names is negligible, at best.  The SEC has already disclosed information sufficient to inform the public about the SEC's operations and activities related to the misconduct.  As to the first *Trentadue* factor, the misconduct at issue concerns the use of government property and official time to view sexually explicit websites on the Internet.  Without minimizing

the nature of these violations, the Court notes that the misconduct was not directly related to *how* the employees performed their official responsibilities, but rather, *whether* and *when* they performed them. This is not a case in which the individuals engaged in potentially criminal conduct when carrying out their official job responsibilities or duties. *Cf. Wood v. FBI*, 312 F.Supp.2d 328 (D. Conn. 2004) (employees falsified arrest warrant affidavits); *Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984) (employees covered up illegal surveillance activity); *Columbia Packing Co. v. USDA*, 563 F.2d 495, 497 (1st Cir. 1977) (employees received bribes). Accordingly, in the instant case, this factor weighs in favor of withholding the employees' names.

Secondly, the SEC is an agency with almost 4,000 employees. The supervisors in question, none of which held positions involving significant policy-making authority, supervised a total of only 22 employees.[5] (Doc. # 73-1, Risinger Dec., ¶¶ 5-8, 11.) Therefore, even assuming the "mindset" of the supervisors filtered down to those they supervised, it can hardly be said that the "attitude" of the SEC toward the fulfillment of

---

[5] Mr. Risinger testified that, of the five employees who are allegedly supervisory, one supervises four employees (SK-15), one supervised five employees before resigning (SK-15), one supervised four employees at the relevant time but no longer supervises any employees (SK-15), and one supervised nine employees at the relevant time but no longer supervises any (SK-17); the employee of grade SK-16 supervises no employees as SK-16 positions are non-supervisory in nature. (Doc. # 73-1, Risinger Dec., ¶¶ 5-7.) Plaintiff offers nothing to dispute this evidence except for expressing doubt as to the supervisory nature of the SK-16 employee. (Doc. # 62, Pl.'s Mot. Summ. J. at 12 n.6; Doc. # 81, Pl.'s Resp to SEC's Mot. Summ. J., at 2, ¶ 4, at 13 n.7.)

its duties and responsibilities can be "gleaned" from the conduct of these 27 individuals, particularly when the conduct was directed to private matters of a sexual nature, *albeit* with the use of government time and property.  (*See* Doc. # 81, Pl.'s Resp. at 10.)

The Court, therefore, agrees with the SEC and Doe that the disclosure of the individuals' names will do little, if anything, to further the public understanding of what the SEC "is up to."  Balanced against the overriding privacy interests the employees have in their identities, the Court finds that the requested disclosure would be a clearly unwarranted invasion under Exemption 6.  The SEC properly withheld this information from production.

b)      *Employees' Job Descriptions*

As to the individuals' job descriptions, Plaintiff contends that the "public has a right to know whether the responsibilities of the SEC employees were, for example, clerical in nature, or whether their responsibilities included involvement in SEC oversight duties (such as investigation or enforcement of securities laws)."  (Doc. # 62 at 17.)

The Court agrees that the public has an interest in understanding what responsibilities and duties may have been eschewed while the employees' attentions were elsewhere.  However, in the instant case, the employees had little to no supervisory responsibilities or significant policy-making functions.  Given that some information about their responsibilities has already been disclosed, the Court finds that the public interest in disclosure of the at-issue job descriptions is outweighed by the privacy interests of the employees.  The disclosure of the job descriptions would only

24

lead to a minimally better understanding of the SEC's activities during the time period in question.  The redacted reports and other information that the SEC has disclosed to date are sufficient to inform the public about the extent and nature of the employees' misconduct as well as the SEC's response to the same. Therefore, the Court holds that the public interest is not sufficient to justify the invasion of the employee's privacy interests.  Under the facts of this case, Exemption 6 precludes the disclosure of the employees' identifying information, including their names and job descriptions.

       3.    <u>Other Exemptions</u>

 In their motions for summary judgment, the parties also addressed the applicability of Exemptions 2, 5, and 7(C).  The Court, however, need not address these other exemptions because it has already determined that the information is protected by Exemption 6.

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED that plaintiff Steese, Evans & Frankel, P.C.'s ("Plaintiff") Motion for Summary Judgment (Doc. # 62) is DENIED.  The Court denies Plaintiff's motion with respect to Exemption 6.  The remaining issues regarding Exemptions 2, 5, and 7(C) are deemed moot.  It is further

ORDERED that defendant United States Securities and Exchange Commission's ("SEC") Motion for Summary Judgment (Doc. # 73) is GRANTED on the basis that Plaintiff failed to exhaust its remedies with respect to a portion of the information it

25

seeks and Exemption 6 of FOIA precludes disclosure of the remainder of the information.  It is further

ORDERED that Intervenor John Doe's ("Doe") Motion for Summary Judgment (Doc. # 75) is GRANTED on the basis that Exemption 6 of FOIA precludes disclosure of the employees' names and job descriptions.  The remaining issue regarding Exemption 7(C) is deemed moot.  It is further

ORDERED that Plaintiff's Motion to Strike Portions of John Doe's Declaration Submitted in Conjunction With John Doe's Motion for Summary Judgment (Doc. # 84) is DENIED.

DATED:  December __07__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge